IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKKI J. SIMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-199-SPS |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Mikki J. Simon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10thCir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305U.S. 197, 229(1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009(10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was forty-seven years old at the time of the first administrative hearing. (Tr. 31). She completed the eleventh or twelfth grade, and has previously worked as a cleanup worker, sewing machine operator, and retail salesclerk. (Tr. 19, 33, 295). Claimant alleges that she has been unable to work since September 18, 2014, due to severe depression, PTSD, bipolar disorder, anxiety, twisted nerve in her back, heart attack, and COPD. (Tr. 294).

## Procedural History

On July 6, 2016, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated July 25, 2018. (Tr. 13-21). On September 2, 2020, this Court remanded for further review. (Tr. 675-688). On January 5, 2022, following a hearing, ALJ Michael Mannes found Claimant was not under a disability as defined in the Act. (Tr. 616-636). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except

> frequently climbing ramps or stairs, occasionally climbing ladders, ropes or scaffolds, frequently balancing and

> stooping, must avoid frequent exposure to dust, odors, fumes and pulmonary irritants,, able to understand, remember and carry out simple routine tasks with routine supervision and routine work breaks, can relate to supervisors and co-workers on a superficial work basis, incidental interaction with the general public, can respond appropriately to changes in a routine work setting which are gradually introduced.

(Tr. 624). The ALJ then concluded that Claimant had no past relevant work but did find there are jobs in the national economy she could perform. (Tr. 627).

## Review

Claimant contends that the ALJ erred by taking action inconsistent with the remand order and that the assigned RFC once again fails to comply with SSR 96-8p. Claimant also alleges the ALJ failed to properly assess Dr. Farrell's opinion. The Court agrees and the decision of the Commissioner must therefore be reversed.

The ALJ found that Claimant had severe impairments of depression, anxiety, and PTSD, substance abuse addiction disorder, COPD, degenerative disc disease, and degenerative joint disease, as well as the nonsevere impairments of kidney disease, hypertension, and vision problems. (Tr. 622). The relevant medical records reveal that Claimant received mental health treatment, including treatment for depression and anxiety at Carl Albert Community Mental Health Center from November 2011 through October 2014. Her discharge in 2014 was due to non-compliance and she was assigned a Global Assessment of Functioning Score of 60 at that time. (Tr. 379). On October 16, 2014, Claimant was admitted to Grand Lake Mental Health Center, Inc. for major depressive affective disorder, recurrent, severe, but she was discharged for noncompliance on April 24, 2015. (Tr. 414-415). Her level of functioning at that time was noted to be 44. (Tr. 415). That same month she was hospitalized for seven days for a suicide attempt after taking thirty sleeping pills. (Tr. 419, 461). She had also had a 15-day emergency detention

inpatient hospitalization in January 2015 for suicidal ideation. (Tr. 426, 565). In June 2015 Claimant again sought mental health treatment, and was assessed with major depressive disorder, recurrent, without psych, as well as generalized anxiety. (Tr. 426). She was noted to have poor memory and attention. (Tr. 425). Claimant was again treated in the emergency department on September 15, 2015, for suicidal ideation, stating that she planned to huff paint and gas to kill herself. (Tr. 490). She was discharged to Wagoner Mental Health that same day. (Tr. 493, 497-499).

In 2016 and 2017, Claimant received primary care treatment at Family Health Center of Southern Oklahoma, where she was treated for, *inter alia*, her anxiety. (Tr. 540). In 2017 and 2018, Claimant received mental health treatment at Red Rock Behavioral Health Services for approximately five months. (Tr. 580). She was discharged with minimal progress and having made poor progress, with notes reflecting Claimant had not picked up refills of medications or responded to messages or letters sent. (Tr. 580). Her diagnoses with Red Rock included bipolar disorder, current episode manic without psych and PTSD. (Tr. 585, 589).

Dr. Kathleen Ward, Ph.D., performed a consultative mental status examination of Claimant on April 19, 2017. (Tr. 559-563). Dr. Ward noted Claimant was unable to complete reverse serial 7's and had some deficits in social judgment and problem solving, and that she had a history of suicide attempts that were sometimes, but not always, related to relational stressors. (Tr. 561). Dr. Ward assessed Claimant with inhalant abuse disorder, moderate to severe, as well as recurrent major depressive disorder, PTSD secondary to abuse history, and rule out borderline personality traits. (Tr. 562).

On April 19, 2011, state reviewing physician William Farrell, Ph.D. found that Claimant's mental impairments consisted of affective disorders, anxiety disorders, trauma and stressor-related

disorders, and substance addiction disorders. (Tr. 151). He did not acknowledge Claimant's repeated hospitalizations for suicidal ideation, and instead noted that she had reliability issues and chronic substance abuse with inhalants and opioids while ignoring the substance abuse connection to the claimant's suicide attempts. (Tr. 152). He acknowledged that she had deficits in social judgment and problem solving, as well as a history of self-mutilation, then noted that "SA [suicide attempts] not always associated w/ relational stressors." (Tr. 152). He found that she had mild limitations in the ability to understand, remember, or apply information and to adapt or manage oneself, but that she had moderate limitations in the ability to interact with others and concentrate, persist, or maintain pace. (Tr. 152).

Dr. Farrell indicated in his mental RFC assessment that the claimant was markedly limited in the ability to interact appropriately with the general public, and that she was moderately limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (Tr. 155-157). He then concluded that Claimant could understand, remember, and perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a routine work setting. (Tr. 157).

At the first administrative hearing, the ALJ summarized Claimant's hearing testimony, as well as some of the evidence in the record. However, the Court found the ALJ ignored any mention of Claimant's repeated suicide attempts, simply noting that Claimant had mental health impairments but that she had been examined on multiple occasions and "demonstrated intact memory, judgment, and control as well as good concentration and fair insight and fund of

knowledge, despite being non-compliant with medication and appointments." (Tr. 18). He assigned great weight to Dr. Farrell's assessment, finding he "correctly opined," and gave diminished weight to the GAF scores in the record, noting they were widely disparate and "at odds with examinations of the claimant within the longitudinal record." (Tr. 19). He made no mention of Dr. Ward's examination other than a citation to her examination record in support of his conclusion that Claimant demonstrated intact memory, judgment, and control, as well as good concentration and fair insight. (Tr. 18).

After remand, Claimant's third hearing was scheduled on August 30, 2021. (Tr. 637-646). However, Claimant was not available to testify, and an individual stated she was "at lunch." The Vocational Witness ("VW") stated she had insufficient evidence to render an opinion. (Tr. 637). Nonetheless, no supplemental hearing was scheduled. On January 5, 2022, the ALJ again found Claimant not disabled. (Tr. 628).

Claimant contends that the assigned RFC as to her mental impairments is unsupported by substantial evidence, and the Court agrees. "The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

Here, the ALJ again fails to cite to any evidence in the record to connect his RFC findings with the evidence related to Claimant's mental impairments. Although the ALJ did address Dr. Farrell's opinion, he found it only partially persuasive. However, neither the ALJ nor the state agency psychologist linked any evidence in the record to show how such limitations account for Claimant's severe mental impairments of depression, anxiety, and PTSD, and both opinions ignored relevant evidence related to her repeated suicide attempts. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").

In the ALJ's updated RFC, the ALJ also reassessed Claimant's ability to adapt and manage herself as "mild" despite having assigned a "moderate" limitation previously. (Tr. 17, 623); CFR §§ 404.977(b), 416.1477(b). Further, rather than discuss the specific severe consequences as discussed by the Court, the ALJ again limited his discussion of the evidence as Claimant being able to "describe her prior work history" or being able to drive. (Tr. 623).

When assessing the "B criteria" at Step Three, an adjudicator must provide rationale that is sufficient for a subsequent court to determine the basis for his finding. *SSR* 17-2p; *Hamlin v. Barnhart,* 365 F.3d 1208, 1224 (10th Cir. 2004) (error where ALJ's two separate decisions use the same language and relied on nearly the same evidence but provided no explanation for a different conclusion). The Court has already found it reversible error for the ALJ to "pick and choose" in this way, or to "cite findings supportive of his own determination while disregarding unsupportive

findings," (Tr. 683) *citing Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir 2004). Even if the ALJ was relying on the single citation he provided to Claimant's "positive mood" in 2021 to demonstrate her improvement, he failed to properly analyze any of Claimant's four involuntary psychiatric holds for suicide attempts, including one that lasted fifteen days, or her five months at Red Rock where she made minimal progress. (Tr. 426, 458, 499, 565, 580, 581, 961). As in his prior decision where he relied on a credibility determination that Claimant "failed to follow her prescribed treatment," the ALJ again relies on a credibility determination that could be ascribed to her bipolar disorder. (Tr. 684).

     Here, the ALJ also determined Claimant "improved with medications," but once again asks this court to "draw a factual conclusion on behalf of the ALJ." (Tr. 685); *Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001); *Prince v. Sullivan,* 933 F.3d 598, 603 (7th Cir. 1991); *Hardman v. Barnhart* 676, 681 (10th Cir. 2004), *Switzer v. Heckler,* 742 F.2d 382, 385- 386 (7th Cir. 1984). Aside from only citing one citation in 2021 to show Claimant eventually improved, the ALJ also found Claimant "signaled she was working" and not interested in pursuing her claim. (Tr. 619). However, the record demonstrates Claimant continued to eschew life-saving healthcare, appeared depressed and nervous, hung up on agency employees requesting they not contact her because she "emotionally" could not "do this." (Tr. 328, 338, 872, 1005, 1007, 1011, 1049, 1080). She also stated she was "head of housekeeping" at a Holiday Inn or Hiway Inn since February of 2019, but also stated she worked from home, yet no income is reflected. (Tr. 902, 1008, 1029). Given Claimant has a history of "building herself up" during manic episodes to feel positive, the ALJ should have scheduled the supplemental hearing as he had stated to determine Claimant's interests, especially as counsel could not speak on her behalf and she had not withdrawn. (Tr. 55, 639-640, 852, 1003).

The ALJ failed his duty to develop the record given Claimant's answers were required for the ALJ's credibility determination. *Thompson v. Sullivan,* 987 F.2d 1482, 1492-1493 (10th Cir. 1993) (remand for supplemental hearing where claimant's answers were required to support the ALJ's credibility determination). Likewise, when concluding Claimant only took, "Visbar," "Resperin," and "Throacatil" in his summary, the ALJ listed three nonexistent medications. (Tr. 624). It is unclear what the ALJ believed these medications to be, and a reviewing court may not infer any reasoning that is not present.[3] It is "well established that a Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry to 'inform himself about the facts' relevant to his decision and to learn the claimant's own version of those facts." *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir. 1987) *citing Heckler v. Campbell,* 461 U.S. 458, 471 n.1 (1983). The most important inquiry as to whether sufficient questions were asked is to ascertain certain factors, including the nature of Claimant's alleged impairments, and its impact on daily activities. *Thompson* at 1492 *citing Musgrave v. Sullivan,* 966 F.2d 1371, 1375 (10th Cir. 1992). This did not occur here as the ALJ did not identify the impact of Claimant's bipolar disorder and whether it truly affected her ability to work or attend her hearing.

Additionally, this was a violation of Claimant's due process rights. *Allison v. Heckler,* 711 F.2d 145, 146 (10th Cir. 1983). Cases where brevity is at issue are problematic as "they do not give many facts." *Thompson v. Sullivan,* 987 F.2d 1482, 1492 (10th Cir. 1993. Here, no pertinent examination of Claimant exists. The ALJ relied on information in the medical record that "signaled" Claimant was working part-time. (Tr. 619). However, Claimant had not withdrawn and had also sent in paperwork stating she would attend the hearing only two months prior. (Tr. 852). The ALJ's reliance on unverified medical reports "signaling" that she was working part-time

---

[3] The Commissioner states Claimant "has not shown that the ALJ's simple recitation of medications was error, other than a minor discrepancy in spelling." (Doc. 20 at 11).

without providing opportunity to offer evidence in rebuttal improperly denied Claimant her opportunity for a fair and full hearing. *Richardson v. Perales, 402 U.S. 389,* 401-402 (1971); *Allison* at 146. For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed, and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby reversed, and the case is remanded for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERD this 31st day of July, 2024.**

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**